**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SLACKPASS, INC. d/b/a LAUNCHPASS, | ) | Case No. 1:23-cv-06393-ER |
| | ) | |
| | ) | **JURY DEMAND** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FROSTED, INC. d/b/a WHOP, CAMERON | ) | |
| ZOUB, and STEVEN SCHWARTZ, | ) | |
| | ) | |
| Defendants. | | |

**DECLARATION OF SETH LESKY**

I, Seth Lesky, declare as follows:

1. I am the founder and Chief Executive Officer of Plaintiff SlackPass, Inc. d/b/a LaunchPass ("LaunchPass"). This declaration is based on my personal knowledge as well as my review of LaunchPass's business records.

2. I am a software engineer and Computer Science honors graduate from the University of Arizona. I started LaunchPass in 2016.

3. I have extensive knowledge of LaunchPass's services, operations and competitive advantages in the market for paid online chat communities (the "Online Chat Community Monetization Market").

4. LaunchPass is the first company to offer a product that enables its customers – entrepreneurs who run the communities – to generate income seamlessly from privately-run online chat communities on two popular social messaging platforms (Slack and Discord). On behalf of its customers, LaunchPass handles community invites, manages permissions and processes membership payments, which enables our customers to monetize their content and popularity online.

5. In the seven years since its founding, through innovation and hard work, LaunchPass has built a significant and loyal customer base and has become a leader in this market.

6. Significantly, there are high barriers to entry to the Online Chat Community Monetization Market, including the considerable time and expense required to develop, test, market and maintain a platform such as the one LaunchPass pioneered, the lack of a base number of users of a new platform, and the resistance of existing users to change platforms absent significant incentives.

7. These barriers are further magnified by network effects. In other words, the more users belong to a platform, the more value that platform will have for possible new users.

8. In view of these challenges, without significant capital, there is little incentive for a new competitor to attempt to create a rival product and enter the Online Chat Community Monetization Market. As a result, there have been relatively few new entrants into this market since its creation in 2016.

9. One of the more successful new entrants was a company called Hyper.co ("Hyper"), which entered the market in 2020.

10. Defendants have recently set out to destroy LaunchPass. To do so, and as described in detail in the Complaint filed in this case, Whop infiltrated LaunchPass's platform to disrupt its systems and services, to harvest customer data and to improperly solicit LaunchPass's customers.

11. Defendants' attacks on LaunchPass's computer systems appeared to have reduced following the filing of this action. However, during the past several weeks, Whop has increased its attacks, both directly and through its proxies (as determined by an examination of the IP

2

addresses of the attacks).   In the first week of November alone, more than 120 sign-up, contacts, logins, and visit attempts have originated from the *same IP address* as prior sign-ups by another Whop employee (Ethan Rotstein) to communities run by LaunchPass's largest, most profitable customers ("VIPs").  A server log reflecting these sign-ups, contacts, logins, and visits is attached as **Exhibit A** to the Motion for Preliminary Injunction ("Motion").

12.     Many of these sign-ups and contacts were initiated by an individual using the email address "surya@whop.com" who, according to LinkedIn is a new Whop "account executive" named Surya Veeravalli who was hired in October 2023.

13.     At the top of his LinkedIn profile, Mr. Veravalli has posted: "Rollercoaster of a week but wouldn't want to do it without anyone else! Excited to say that I joined the Whop team as one of their first Account Executives! S/o David MacCumber for showing me the path and Cameron Zoub, Hunter Dickinson, Ike Baldwin and Steven Schwartz for letting me talk their ear off. Excited to take the jump 🚀 ."  A screenshot of Mr. Veravalli's LinkedIn page reflecting this post is attached as **Exhibit B** to the Motion.

14.     In more recent days (November 7-9), in an apparent attempt to mask his status as a Whop employee, Mr. Veeravalli began using a personal Gmail address (suryaveeravalli1@gmail.com) and Discord user name "sundawg3199 (SCOOBNOOb)."

15.     Mr. Veeravalli (unlike most users) has never signed up for an offer to actually use LaunchPass services.  Instead, each sign-up request appears to be an attempt to gain unauthorized access to LaunchPass to solicit customers.

16.     Each "sign-up" under false pretenses violates LaunchPass's Terms, which (among other things) prohibit "unsolicited or unauthorized advertising, promotional materials, junk mail, spam…, or any other form of duplicative or unsolicited messages", "harvest[ing], collect[ing],

gather[ing] or assembl[ing] information or data regarding other users, including e-mail addresses, without their consent"; "attempt[ing] to gain unauthorized access to the Site"; "harass[ing] or interfere[ing] with any other user's use and enjoyment of the Site; or (vi) us[ing] software or automated agents or scripts to produce multiple accounts on the Site, or to generate automated searches, requests, or queries to (or to strip, scrape, or mine data from) the Site …."

17.     In addition to Whop's new employee, other Whop employees have continued to assail the LaunchPass platform with additional user sign-ups, contacts, logins, and visits also in an attempt to target and poach LaunchPass customers.

18.     Other Whop employees using both their Whop email addresses and personal email addresses have been identified, including Whop's "Head of Strategy" Hunter Dickinson (using the personal email address hunterdickinson2002@gmail.com), Ethan Rotstein, Dillon Borgida, using both the email address "dillon@whop.com" and a personal email address "dborgida@gmail.com," and Ari Brozost, another new Whop "account executive" using both the email address ari@whop.com and a personal email address adbrozost@gmail.com.

19.     Then, using this access, Whop has ramped up their attempts to target and poach additional LaunchPass customers.  Sample screenshots reflecting these attempts, discovered by LaunchPass's internal investigations, are attached as **Exhibits C, D,** and **E** to the Motion.

20.     As a result of Whop's renewed efforts to gain unauthorized access to LaunchPass and contact LaunchPass's customers by virtue of its signups to LaunchPass communities, LaunchPass is incurring significant additional costs and manhours to detect and respond to Whop's improper access.

21.     LaunchPass is also continuing to suffer incalculable harm due to Whop's improper solicitation and recruitment of LaunchPass customers once Whop gains improper

access, as well as a risk of further irreparable harm due to Whop's improper solicitation and diversion of LaunchPass customers.

22. Whop's actions undermine the security of the LaunchPass platform and thereby threaten the loss of good will of LaunchPass's customers.

23. In addition to its improper and unauthorized accessing of the LaunchPass platform, Whop has implemented a predatory pricing scheme to lure LaunchPass's most profitable customers away from LaunchPass.

24. In early 2023, Whop began making offers directly to LaunchPass's most profitable customers that were markedly different from the fees advertised on Whop's website (i.e., 4.5% + 40 cents when Whop is Merchant of Record and 3% for clients using Stripe), offering to provide Whop's services *for free* to existing LaunchPass customers for a period of one or two years.

25. Often, Defendants coupled their "free services" proposals with offers of trips and "signing bonuses" in the amount of up to $10,000 to LaunchPass customers in exchange for switching to Whop.

26. Mr. Zoub, one of Whop's founders, directly told and wrote to me that the Defendants will eliminate LaunchPass as a competitor. Mr. Zoub contacted me in May, 2023, and requested to speak via telephone. During our phone call, Mr. Zoub told me that Whop had recently purchased a competitor (I presume that he was referring to Hyper) for a severely depressed price because Whop had been successful in forcing most of that competitor's customers to "churn" (i.e., to leave that company or force it to offer its services for free). Mr. Zoub also presented me with an ultimatum. Specifically, Mr. Zoub stated that LaunchPass could shut down its operations and transfer all of its customers to Whop in exchange for 40% of

revenues for the next several years. Alternatively, LaunchPass could sell its business to Whop. Finally, if LaunchPass was unwilling to accept either of those alternatives, Mr. Zoub explained that Defendants would simply drive LaunchPass out of business by continuing to target LaunchPass's customers and offering them free services and other "bonuses."

28. Mr. Zoub restated that ultimatum in a follow-up email exchange, a true and correct copy of which is attached to the Motion as **Exhibit F**.

28. As of the filing of the Complaint in July, Whop had successfully lured away dozens of LaunchPass customers in that manner, accounting for more than $80,000 in lost monthly revenues.

29. After this suit was filed in July, 2023, Whop shifted and ramped up its predatory pricing efforts (among others) targeting LaunchPass and focusing its attention on LaunchPass's highest earning customers.

30. First, instead of just offering free services or one-time signing bonuses, Whop has begun offering to pay LaunchPass's customers a percentage – sometimes as high as 30%, and for a period of time as long as six months – of those customer's monthly recurring revenue ("MRR") generated on the Whop platform.

31. According to one LaunchPass VIP, in mid-September, 2023, Whop offered to pay the VIP 30% "on top of" that VIP's MRR for 6 months. In practical terms, if that customer earns $10,000 in one month from its paid online community, Whop has agreed *to pay that customer an additional $3,000 every month*. This deal was not only extended to that customer, but to any other customer the VIP could get to join Whop.

32. Thus, even if Whop were charging that customer what it purports to charge all of its other customers – 3%-4.5% per transaction, or $300-$450, per month – this scheme results in

a net monthly loss for Whop of 26.5%-27% per month. Stated differently, Whop's "deal" results in *a total net loss of $18,000 on revenues of $1,800-$2,640* – during the next 6 months. Furthermore, if the VIP encourages another Launchpass customer to leave Launchpass and join Whop, the VIP would receive up to 30 % of that group's MRR paid directly by Whop. We last heard of this happening on or about September 22. Recently, Whop has increased efforts to recruit LaunchPass customers via their affiliate system. The new payout system for their affiliates implies that the affiliate would receive 30% of profits accrued by the customer.

33. Even the VIP who received the offer at issue expressed confusion with the terms, stating "I don't quite understand their financial incentive … Or business model." A true and correct copy of this text exchange is attached to the Motion as **Exhibit G**. Nonetheless, that VIP unsurprisingly demanded that LaunchPass either match the offer or lose his business.

34. I have seen this situation recur over and over again in recent months, as an ever-increasing number of LaunchPass's significant remaining customers are demanding that LaunchPass match Whop's predatory and loss-generating offers or lose their business to Whop. In recent weeks, LaunchPass customers have informed me that aggressive, affiliate-focused pressure tactics have increased. These affiliates apparently are responding to the misleading advertisement where Whop appears to be paying substantial payouts to affiliates as described in Paragraph 32, above.

35. Second, LaunchPass has learned that Whop has recently offered another LaunchPass customer an even more generous offer, consisting of (i) two free months of service; (ii) a *de minimis* (and below-cost) 0.5% monthly fee for an indefinite period of time; and (iii) a $10,000 upfront "signing bonus." A true and correct copy of the agreement Whop sent this customer is attached to the Motion as **Exhibit H**.

36. This is not a one-off offer; LaunchPass has learned that Whop is luring other LaunchPass customers to leave by promising them exorbitant "signing bonuses" of $10,000, together with nominal fees (of between .25%-2% per transaction) for some indeterminate period into the future.

37. In addition, as noted above, Whop has focused its attention on LaunchPass's VIPs, even asking prior LaunchPass customers for references to other high-earning customers. In one recent Discord conversation, Hunter Dickinson, Whop's head of strategy, contacted a former LaunchPass customer, stating:

> I am trying to find trading groups / digital product sellers that are pulling in 100k + MRR that aren't on Whop yet. Really struggling do you know anyone lol?

*See* **Exhibit I** to the Motion.

38. Many LaunchPass customers have left the platform in recent months for Whop without any explanation. Based on my experience, it is reasonable to conclude that most, if not all, of them have received similar offers from Whop.

39. Based on the terms of the offers extended to LaunchPass's customers, Whop appears to have calculated that it can successfully accomplish its objective of destroying LaunchPass within the next six months. Whop has the financial wherewithal to withstand such losses for that period of time, given that in July, 2023, Whop announced that it had secured an additional $17 million in seed capital. A true and correct copy of an article regarding this investment is attached to the Motion as **Exhibit J**.

40. LaunchPass has suffered and is continuing to suffer significant monetary and irreparable harm as a result of the Defendants' misconduct.

41.    Notably, many of Whop's "top 100" customers are former LaunchPass customers that Whop has improperly diverted from LaunchPass.  A screenshot of Whop's statements in this respect is attached to the Motion as **Exhibit K**.  Of the 14 companies listed, 9 are former LaunchPass VIPs.

42.    In fact, Whop has created an ad boasting that over 100 LaunchPass customers are now on Whop.  *See* **Exhibit L** to Motion.

43.    Whop is even boasting that certain *current* significant LaunchPass customers are "coming soon."  A screenshot of Whop's site making this statement is attached to the Motion as **Exhibit M**.

44.    We have been informed by several of our significant customers that Whop has been contacting them systematically with predatory offers, but these customers have elected (for now) to remain on LaunchPass's platform.

45.    Whop's predatory pricing scheme has been relentless and shows no signs of abating.

46.    The damage Whop's predatory pricing is causing to LaunchPass is incalculable. Specifically, LaunchPass has already lost and is continuing to lose (i) an indeterminate number of unknown business opportunities through lost customer referrals; (ii) its customer relationships; (iii) its reputation and goodwill; and (iv) its share of the Online Chat Community Monetization Market.

47.    In fact, Whop's market share is significant and growing rapidly – approaching 50% in view of its recent destruction and capture of Hyper's business and customers and its aggressive tactics targeting LaunchPass's customers.

48. Notably, LaunchPass is losing customers to Whop – not to any other competitors. Of the 150 LaunchPass customers departing the LaunchPass platform since July of 2023, it appears that approximately 90% have left the LaunchPass platform to join Whop.

49. Whop's market share will likely reach 80% of the third party Online Chat Community Monetization Market if LaunchPass is eliminated from the market.

50. If Whop's conduct is not halted, there is a real and imminent risk that Whop will succeed in forcing LaunchPass out of business before this case can be adjudicated on the merits.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: November 17, 2023        _____
                                Seth Lesky