UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SLACKPASS, INC. D/B/A
LAUNCHPASS,

                          Plaintiff,

             – *against* –

FROSTED, INC. D/B/A WHOP,
CAMERON ZOUB, AND STEVEN
SCHWARTZ,

                          Defendants.

**OPINION & ORDER**

23-cv-06393 (ER)

RAMOS, D.J.:

SlackPass, Inc. d/b/a LaunchPass, brought this action against Frosted, Inc. d/b/a Whop ("Whop"), Cameron Zoub ("Zoub"), and Steven Schwartz ("Schwartz" and collectively, "Defendants"), alleging that Defendants violated federal and state antitrust laws, the Computer Fraud and Abuse Act ("CFAA"), and the Lanham Act, and engaged in disparagement, defamation, unfair competition, and tortious interference with LaunchPass' business relationships.  Doc. 60 at 35–47.

Before the Court is Defendants' motion to compel arbitration and strike the demand for a jury trial.  Doc. 95.  For the reasons set forth below, the motion is DENIED.

I.      **BACKGROUND**

      **A.  Alleged Conduct**

Founded in 2016, LaunchPass is a service provider that helps its customers manage their paying subscribers on online chat platforms such as Slack and Discord. Doc. 60 ¶¶ 19–23.  LaunchPass' customers charge fees for others to join their online chat communities and access content.  *Id*. ¶ 22.  LaunchPass helps its customers authorize and restrict community access, manage and track memberships, process payments, and track metrics.  *Id*.

Whop is a competitor of LaunchPass and was founded by Zoub, Schwartz, and Jack Sharkey in 2021. *Id.* ¶ 37. In late 2022, Zoub, Schwartz and other agents of Whop allegedly started to intentionally access LaunchPass' computer systems without authorization or in excess of the authorization they obtained by virtue of their paid membership with LaunchPass' customers. *Id.* ¶¶ 56–57. Among other things, they signed up for various private chat communities maintained by LaunchPass customers and thereby gained access to LaunchPass' computer systems. *Id.* ¶¶ 57–58. With the access, Defendants allegedly obtained LaunchPass' unpublished information, diverted its customers, and disrupted its services. *Id.* ¶ 58.

### B. LaunchPass' Terms of Use

All the members of the online chat communities who use LaunchPass' platform, must accept LaunchPass' Terms of Use ("Terms"). *Id.* ¶ 65. The Terms include a section titled "Dispute Resolution." Doc. 97-1 at 8. Immediately beneath this title, a prefatory paragraph urges subscribers to "read this Arbitration Agreement carefully." *Id.* The Dispute Resolution section includes a mandatory arbitration clause and a jury waiver clause. *Id.* at 8–12. The section also provides that several claims are not subject to the Arbitration Agreement, including claims of defamation, violations of the CFAA, and infringement or misappropriation of LaunchPass' patent, copyright, trademark, and trade secrets. *Id.*

In the amended complaint, LaunchPass alleges that Defendants signed up for online chat communities maintained by LaunchPass' customers in order to gain access to LaunchPass' systems. Doc. 60 ¶¶ 57–58. Defendants argue that LaunchPass' claims are subject to the mandatory arbitration clause and the jury trial waiver because according to

the amended complaint, these claims arise directly from violations of the Terms or from Defendants' use of LaunchPass' products.[1]  Doc. 96 at 2–3.

### C.  Procedural Background

LaunchPass filed this action on July 24, 2023, Doc. 1, and submitted a corrected complaint on July 27, 2023, Doc. 13.  An amended complaint was filed on February 22, 2024.  Doc. 60.  LaunchPass brought claims for predatory pricing and attempted monopolization under the Sherman Act (Counts 1 and 2); predatory pricing and attempted monopolization under the Arizona Uniform State Antitrust Act (Counts 3 and 4); violations of the CFAA (Count 5); violations of the Lanham Act (Count 6); tortious interference with existing and prospective contractual relationships (Count 7); commercial disparagement (Count 8); defamation (Count 9); and unfair competition (Count 10).  *Id*. at 35–47.

Defendants initially moved to dismiss each of LaunchPass' claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 65.  The motion was granted in part and denied in part on March 31, 2025.  Doc. 79.  Specially, Defendants' motion was granted as to the predatory pricing claims (Counts 1 and 3) and denied as to all other claims.  *Id*.  On August 14, 2025, Defendants filed the instant motion to compel arbitration and to strike the demand for a jury trial.  Doc. 95.

## II.    LEGAL STANDARD

### A.  Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  The FAA places arbitration agreements on "the same footing as other contracts."  *Schnabel v. Trilegiant*

---

[1] Defendants move to compel arbitration of LaunchPass' claims under the Sherman Act, Section 2 Attempted Monopolization (Count 2); Arizona Antitrust Attempted Monopolization (Count 4); the Lanham Act (Count 6), Tortious Interference (Count 7), Commercial Disparagement (Count 8), and Unfair Competition (Count 10).  Defendants do not move to compel arbitration of the CFAA claim (Count 5) and the defamation claim (Count 9).

*Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).  But parties are not required to arbitrate unless they have agreed to do so.  *Id.*  Thus, before an agreement to arbitrate can be enforced, the district court must first determine whether such an agreement exists between the parties.  *Id.*  This question is determined by state contract law principles.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact.  *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment.  If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.").  On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and draws "all reasonable inferences in favor of the non-moving party."  *Meyer v. Uber Technologies., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citations omitted).

If a court determines that a valid arbitration agreement exists, the court must then determine whether the particular dispute falls within the scope of the agreement.  *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) (citation omitted).  If the dispute falls within the scope of the arbitration agreement, the "role of the court ends and the matter is one for arbitration."  *Unique Woodworking, Inc. v. N.Y.C. Dist. Council of Carpenters' Pension Fund*, No. 07-cv-1951 (WCC), 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007).

### B.  Motion to Strike the Demand for a Jury Trial

"While the right to a jury trial is fundamental, 'a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily.'"  *Aquino v. Alexander Capital LP*,

4

No. 23-1109, 2024 WL 2952497, at *2 (2d Cir. June 12, 2024) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007)).  After determining a contractual jury waiver is enforceable, a court must decide the scope of the jury waiver. *Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.*, 327 F. Supp. 3d 673, 686 (S.D.N.Y. 2018).  A court should apply state substantive law to interpret the scope of jury waiver clauses.  *Stephens Inc. v. Flexiti Financial Inc.*, No. 18-cv-8185 (JPO), 2019 WL 2725627, at *9 (S.D.N.Y. July 1, 2019).  The plain language of these clauses has to be construed literally.  *Kortright*, 327 F. Supp. 3d at 686.  But a court may not override the clear and unambiguous language in which the parties have expressed their purpose, just to construe the language of the clauses literally.  *Caplan v. Goldman*, 197 Misc. 404, 405 (App. T. 1st Dep't 1950), aff'd, 278 A.D. 807 (1st Dep't 1951).

## III.    DISCUSSION

### A.  Waiver of Right to Arbitration

The Terms include a mandatory arbitration clause which provides as follows:

> **Applicability of Arbitration Agreement.**  All claims and disputes . . . in connection with the Terms or the use of any product or service provided by [LaunchPass] that cannot be resolved informally or in small claims court shall be resolved by binding arbitration on an individual basis under the terms of this Arbitration Agreement. . . . This Arbitration Agreement applies to you and [LaunchPass], and to any subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Terms.

Doc. 97-1 at 8-9.  LaunchPass argues that Defendants have waived their right to arbitrate based on Defendants' litigation conduct before this Court.  Doc. 100 at 5–11.  The Court finds that Defendants have waived their right to compel arbitration regarding all the arbitrable claims.

The Second Circuit has held that when a plaintiff asserts a waiver of right to arbitrate based on a defendant's litigation conduct, this issue of waiver is one for the court to decide.  *GPS International Technologies, Inc. v. Verizon Communications, Inc.*, No. 24-

cv-07758 (ALC), 2025 WL 2776095, at *5 (S.D.N.Y. Sept. 30, 2025) (holding that the waiver is a question for the court if it is asserted based on a defendant's litigation conduct).  In the present case, LaunchPass asserts that Defendants have waived their right to enforce arbitration by filing a motion to dismiss, submitting a discovery plan jointly with LaunchPass, requesting multiple extensions of time to respond to the complaint, and eventually answering the amended complaint with affirmative defense.  Doc. 100 at 9–10.

To determine whether a moving party has waived their right to arbitrate, a court must ask if the party knowingly relinquished that right by acting inconsistently with it. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022); *see also Doyle v. UBS Financial Services*, 144 F.4th 122, 129–130 (2d Cir. 2025) (clarifying that the post-*Morgan* waiver standard asks whether the moving party knowingly relinquished the right to arbitrate by acting inconsistently with that right).  A court may consider all aspects of a moving party's conduct to make the determination. *Doyle,* 144 F.4th at 129–130.  A court may consider the time elapsed in the present litigation and the amount of litigation activity as organic parts of the moving party's conduct, as long as these factors are not viewed through the lens of prejudice to the nonmoving party. *Id.* at 130.

In *Doyle*, defendants first filed a motion to dismiss, arguing that the district court should abstain based on *Colorado River* and that the complaint failed to state a claim.  144 F.4th at 130–131.  After the district court denied the motion to dismiss, defendants filed a motion to compel arbitration, which was also denied. *Id.* at 131.  The Second Circuit affirmed the district court's denial of the motion to compel arbitration on the ground that defendants' conduct was inconsistent with the right to arbitrate. *Id*.  The Second Circuit held that "[a]rbitration is not a fallback position.  It's not a second bite at the apple.  Rather, a party with a claim to arbitration faces a binary choice:  litigation or arbitration.  One cannot have it both ways." *Id.* (internal quotation marks omitted).  According to the Second Circuit, the main focus of the motion to dismiss was *Colorado River* abstention, thus making the motion particularly inconsistent with the right to

6

arbitrate because defendants were seeking to remove the case completely from federal courts. *Id*. at 132. In addition, and importantly in the context of this case, in a footnote, the Second Circuit held that "[l]ikewise . . . a party's moving to dismiss a complaint on the basis of failure to state a claim would preclude any motion to compel arbitration." *Id*. at 132 n.10.

In the present case, the Court finds that Defendants have relinquished their right to arbitrate by acting inconsistently with that right. *See Doyle*, 144 F.4th at 130. Similar to defendants in *Doyle*, Defendants filed a motion to dismiss for failure to state a claim before moving to compel arbitration. *Id*.; Doc. 65. The motion to dismiss sought to resolve the entire case before this Court. By filing the motion, Defendants made a binary choice to resolve this case through litigation instead of arbitration. *See id*. at 131. It was only after the Court granted the motion to dismiss in part that Defendants moved to compel arbitration. Doc. 79; Doc. 95. Defendants thus used arbitration as a fallback position, which the Second Circuit has prohibited. *Doyle*, 144 F.4th at 131.

Defendants argue that *Doyle* is distinguishable because Defendants did not ask for a "full and final resolution" as defendants did in *Doyle*. Doc. 101 at 2–3. Defendants cite a Fifth Circuit case distinguishing motions to dismiss that point out the deficiency in plaintiff's legal theories and motions to dismiss merely asserting that allegations in plaintiff's pleadings are vague or conclusory. *Id*. at 3; *Pumphrey v. Triad Life Sciences, Inc*., No. 24-60028, 2024 WL 4100495, at *2–3 (5th Cir. Sept. 6, 2024). The Fifth Circuit case held that standing alone, the latter type of motion does not warrant a waiver of the right to arbitrate, unlike the former one. *Pumphrey*, 2024 WL 4100495, at *2–*3. Defendants urge this Court to follow *Pumphrey* by arguing that the Second Circuit acknowledged that certain motions to dismiss can't be considered as seeking a full and final resolution. Doc. 101 at 3–4. Defendants base this argument on *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015); Doc. 101 at 3–4. In *Loreley*, the Second Circuit reviewed the district court's dismissal for

failure to state a claim and denial of leave to amend the complaint. *Loreley*, 797 F.3d at 169. The Second Circuit held that the district court abused its discretion in denying leave to amend because the district court had not previously addressed the merits of the complaint. *Id.* at 189–90. *Loreley* also did not involve an arbitration claim. Thus, *Loreley* does not support Defendants' position.

Moreover, although the Second Circuit noted in *Doyle* that "a party's moving to dismiss a complaint on the basis of failure to state a claim would preclude any motion to compel arbitration," according to Defendants, this holding does not mean that *any* motion to dismiss for failure to state a claim would waive a defendant's right to arbitrate because the holding is only in a footnote and does not include any supporting analysis. Doc. 101 at 3; *Doyle*, 144 F.4th at 132 n.10.

The Court rejects these arguments. As a preliminary matter, this Court is not bound by Fifth Circuit decisions. Moreover, even if the Second Circuit agrees that certain motions to dismiss do not seek a full and final resolution, it has not applied this distinction to decide whether a party has waived the right to arbitrate. *See Loreley,* 797 F.3d at 189–90. In any event, Defendants *did* seek a full and final resolution in their motion to dismiss by requesting that the Court to "dismiss each of LaunchPass' claims with prejudice and without leave to amend." Doc. 66 at 1; *see Pumphrey*, 2024 WL 4100495, at *2–3.

In addition, the language of *Doyle* is clear. It provides that "[l]ikewise, of course, a party's moving to dismiss a complaint on the basis of failure to state a claim would preclude any motion to compel arbitration." *Doyle*, 144 F.4th at 132 n.10. The word "likewise" suggests that a motion to dismiss for failure to state a claim alone can be a sufficient ground to deny the motion to compel arbitration. The Second Circuit did not include any qualifying language, suggesting no further distinction was needed.

In addition to filing a motion to dismiss, other conduct by Defendants also evince a choice to litigate rather than arbitrate. *See id*. at 131. LaunchPass initiated the action

on July 24, 2023.  Doc. 1.  Defendants raised the possibility of arbitration for the first time in their answer on May 13, 2025.  Doc. 90, Doc. 101 at 5.  During the two years between the filing of the complaint and the motion to compel arbitration, Defendants actively litigated the case by filing a motion to dismiss, Doc. 65, answering the amended complaint with affirmative defenses, Doc. 90, and submitting a discovery plan jointly with LaunchPass, Doc. 88.  These activities evince Defendants' clear choice to proceed by way of litigation and are plainly inconsistent with the right to arbitrate.  *Doyle*, 144 F.4th at 131.

Defendants also argue that the litigation cannot be viewed as having been pending for two years as LaunchPass claims because the operative complaint "materially changed" when LaunchPass amended its complaint in February 2024.  Doc. 101 at 5.  The Court disagrees that the amended complaint impacted Defendants' ability to compel arbitration earlier in any material manner.[2]  *See* Doc. 60.

Accordingly, the Court finds that Defendants have waived the right to arbitrate the arbitrable claims and thus there is no need to determine the enforceability or the scope of the arbitration agreement.

### B.  Waiver of Right to a Jury Trial

LaunchPass demanded a trial by jury on all issues so triable.  Doc. 60 at 49.  Defendants move to strike this demand.  Doc. 95 at 1.  In their opening memorandum of law, Defendants argue that LaunchPass waived its right to a jury trial regarding the CFAA and defamation claims by including a jury waiver clause in the Terms ("Waiver").  Doc. 96 at 20.  In their reply, Defendants expand their position and argue that through

---

[2] LaunchPass filed the initial complaint on July 24, 2023.  Doc. 1.  Three days later, it filed a corrected complaint to rectify several clerical errors.  Doc. 13.  Compared to the corrected complaint, the operative amended complaint further alleges Defendants' conduct after the initiation of the present action, which was a continuation of the same conduct alleged in the corrected complaint.  *See generally* Docs. 13, 60.  The amended complaint also adds corroborating details, such as the list of customers allegedly poached by Defendants.  Therefore, the Court does not believe that the amended complaint materially changed the arbitration prospect of the action.

the Waiver, LaunchPass waived its right to a jury trial regarding all of its claims. Doc. 101 at 10. LaunchPass, however, claims that the Waiver applies only to suits to vacate or enforce an arbitration award. Doc. 100 at 22–23. The Court finds that the Waiver does not apply to any of the claims in this action.

There is no dispute over the enforceability of the Waiver. The Waiver provides as follows:

> **Waiver of Jury Trial**. THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY, instead electing that all claims and disputes shall be resolved by arbitration under this Arbitration Agreement. . . . In the event any litigation should arise between you and [LaunchPass] in any state or federal court in a suit to vacate or enforce an arbitration award or otherwise, YOU AND THE COMPANY WAIVE ALL RIGHTS TO A JURY TRIAL, instead electing that the dispute be resolved by a judge.

Doc. 97-1 at 10.

According to Defendants, the provisions of the Waiver quoted above indicate the scope of the Waiver. Doc. 96 at 22; Doc. 101 at 9. Defendants argue that "[n]othing about [the language of the first sentence] confines the waiver to arbitrable disputes." Doc. 101 at 9. The Court concludes otherwise. The first sentence of the Waiver clearly references waiver of a trial in front of a jury and in front of a judge and requires that any dispute be resolved by arbitration. Doc. 97-1 at 10. In *Clarex Ltd. v. Natixis Securities Americas LLC*, No. 12-cv-7908 (PAE), 2013 WL 6189260, at *2 (S.D.N.Y. Nov. 25, 2013), the contract provided that the parties "waive their right to seek remedies in court, including the right to a jury trial," under a section titled "Arbitration Disclosures." The court held that the jury waiver was not independently enforceable because it was premised on the parties having chosen to pursue arbitration. *Id*. Since the parties chose to litigate the claims, the right to a jury trial was preserved. *Id*. Similarly, in the present

10

case, the jury waiver in the first sentence is premised on the parties having chosen to pursue arbitration. It is not enforceable now as the parties are going to litigate this case.

According to Defendants, the last sentence in the Waiver also indicates the scope of the jury waiver: "[i]n the event any litigation should arise between [a user] and [LaunchPass] in any state or federal court in a suit to vacate or enforce an arbitration award or OTHERWISE, [the user] and the company waive all rights to a jury trial." Doc. 97-1 at 10 (emphasis added). Defendants argue that the word "otherwise" includes all the claims in this action. Doc. 96 at 22; Doc. 101 at 9–10. They cite *Spinelli v. NFL*, where the Second Circuit held that all contractual terms must be given full effect and meaning and interpretations that render provisions of a contract superfluous are particularly disfavored. Doc. 101 at 9 (citing *Spinelli v. NFL*, 903 F. 3d 185, 200 (2d Cir. 2018)). Defendants also assert that the Waiver would not have independent effect if it were not to be interpreted as they suggest. *Id*. But not interpreting "otherwise" as Defendants suggest would not make the contractual term superfluous because the term clearly requires that actions brought to vacate or enforce an arbitration award should be tried by a judge. Doc. 97-1 at 10; Doc. 100 at 22–23.

### 1. Non-arbitrable Claims

The Court finds that the right to a jury trial regarding the non-arbitrable claims—the CFAA and defamation claims—is preserved. The language of the Terms clearly carves out the CFAA and defamation claims from the Waiver. Doc. 97-1 at 11. Because the CFAA and defamation claims are not subject to the Arbitration Agreement, the Waiver, as a part of the Arbitration Agreement, does not govern these claims.

11

### 2. Arbitrable Claims

In their reply, Defendants argue that even if they waived their right to arbitrate, the jury waiver regarding the arbitrable claims[3] stands. Doc. 101 at 10. Defendants suggest that the word "otherwise" in the last sentence of the Waiver includes all the arbitrable claims too. Doc. 101 at 9. However, the Court cannot construe such a general term so broadly. Terms in a provision must be construed in accordance with the meaning of the words that are associated with them. *In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 322 (S.D.N.Y. 2008). When a catch-all phrase follows specific terms, based on the principle of *ejusdem generis*, the catch-all phrase should not be construed broadly and should be interpreted as sharing the characteristics of the specific terms preceding. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004) (holding that *ejusdem generis* attributes to the last item in a sequence of items the same characteristic of discreteness that is shared by all the preceding items). Thus, the word "otherwise" should be interpreted to share the same characteristics as the preceding terms, "in a suit to vacate or enforce an arbitration award." *See id.*; Doc. 97-1 at 10. The rest of LaunchPass' claims, including attempted monopolization, Lanham Act, tortious interference, disparagement, and unfair competition claims, do not share sufficient similarity with a suit to vacate or enforce an arbitration award. Thus, the Court finds that the word "otherwise" does not include these claims and the right to a jury trial regarding these claims is preserved.

Defendants also argue that the principle of *contra proferentem* supports their interpretation of the Terms because the Court should construe ambiguities against the drafter, which in this case is LaunchPass. Doc. 101 at 10. But as discussed above, the Court does not find sufficient ambiguity to invoke *contra proferentem*. In addition, a court has to construe a contractual waiver of jury trial narrowly and strictly apply the

---

[3] The arbitrable claims are attempted monopolization under the Sherman Act, attempted monopolization under the Arizona Uniform State Antitrust Act, violations of the Lanham Act, tortious interference with existing and prospective contractual relationships, commercial disparagement, and unfair competition.

requirement that such contract has to be made knowingly, intentionally, and voluntarily. *Sherrod v. Time Warner Cable, Inc.*, No. 14-cv-1471(JLC), 2014 WL 6603879, at *2 (S.D.N.Y. Nov. 21, 2014) (quoting *Morgan Guaranty Trust Company of New York v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999)).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and strike the demand for a jury trial is DENIED.  The parties are directed to appear for a telephonic status conference at 11:30 a.m. on April 29, 2026.  The parties are directed to dial (855) 244-8681 and enter access code 2301 087 7354 when prompted.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 95.

It is SO ORDERED.

Dated:    March 30, 2026
       New York, New York

_____
        EDGARDO RAMOS, U.S.D.J.